**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawla.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: (310) 633-0705
Fax: (310) 359-0258

*Counsel for Plaintiff and the Proposed Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA OCEGUERA and MOHAMMAD WAFAI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BABY TREND, INC., a California corporation,<br><br>Defendant. | Case No.: 5:21-CV-398<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sandra Oceguera and Mohammad Wafai (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Baby Trend, Inc. ("BTI") for its misleading marketing and sale of defective booster seats to the Plaintiffs and other consumers resulting in violation of state consumer statutes and common law. Plaintiffs' allegations are based upon personal knowledge as to themselves and their own actions, and upon information and belief as to all other matters, which are based upon, among other things, the investigation of counsel.

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this class action alleges a claim under the Magnuson-Moss Warranty Act, the amount in controversy is equal to or exceeds $50,000, exclusive of interest and costs, there are

more than 100 Class Members, and the amount-in-controversy of any individual claim exceeds $25. 15 U.S.C. § 2310(d)(3)(B).

2.    This Court also has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 Class Members, and at least one Class Member is a citizen of a state different from BTI.

3.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.    The Court has personal jurisdiction over BTI because it is headquartered in this District, has regular and systematic contacts with this District, and place its products into the stream of commerce from this District, including the Booster Seats purchased by Plaintiffs.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BTI maintains its headquarters in this District.

## II. PARTIES

### A.    Defendant

6.    Defendant **Baby Trend, Inc.** is a California corporation with its principal place of business at 13048 Valley Boulevard, Fontana, CA 92335. BTI designs, manufactures, markets, sells, and distributes the Booster Seats throughout the United States.

### B.    Plaintiffs

7.    Plaintiff **Sandra Oceguera**, a citizen of the State of California, residing in Fresno, California, bought a BTI Yumi Folding High Back Booster Seat on or about July 31, 2020 on Amazon.com. Plaintiff Oceguera decided to buy the Booster Seat based in large part on BTI's representation that it was "safe" for children as light as thirty (30) pounds. This representation was among the primary reasons Plaintiff Oceguera chose the Booster Seat. At the time of purchase, Plaintiff Oceguera did not

know that the Booster Seat could not perform as advertised. Indeed, Plaintiff Oceguera would not have purchased the Booster Seat, or would have paid less for it, had she known that the Booster Seat was not safe for children as light as thirty (30) pounds and as young as three (3) years old. Plaintiff Oceguera has suffered a concrete injury as a direct and proximate result of BTI's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had BTI not misrepresented the Booster Seat as safe for children as light as thirty (30) pounds and as young as three (3) years old, and that it was side impact tested.

8.     On or about March 2, 2021, Plaintiff Oceguera's counsel sent notice to BTI concerning its wrongful conduct as alleged herein by Plaintiff and the Class Members. To date, BTI has not provided the relief requested by Plaintiff Oceguera and the Class Members.

9.     Plaintiff **Mohammad Wafai**, a citizen of the State of California, residing in Sacramento, bought a BTI Yumi Folding High Back Booster Seat on or about January 11, 2021 on Amazon.com. Plaintiff Wafai decided to buy the Booster Seat based in large part on BTI's representation that it was "safe" for children as light as thirty (30) pounds. This representation was among the primary reasons Plaintiff Wafai chose the Booster Seat. At the time of purchase, Plaintiff Wafai did not know that the Booster Seat could not perform as advertised. Indeed, Plaintiff Wafai would not have purchased the Booster Seat, or would have paid less for it, had she known that the Booster Seat was not safe for children as light as thirty (30) pounds and as young as three (3) years old. Plaintiff Wafai has suffered a concrete injury as a direct and proximate result of BTI's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had BTI not misrepresented the Booster Seat as safe for children as light as thirty (30) pounds and as young as three (3) years old, and that it was side impact tested.

10.     On or about March 2, 2021, Plaintiff Wafai's counsel sent notice to BTI concerning its wrongful conduct as alleged herein by Plaintiff and the Class Members.

To date, BTI has not provided the relief requested by Plaintiff Wafai and the Class Members.

### III. NATURE OF THE ACTION

11.    BTI manufactures and markets children's products, including infant car seats and booster seats. Within that line of products, BTI sells its "Baby Trend Protect Yumi 2-in-1 Booster Seat" and "Baby Trend Protect Yumi Folding High Back Booster Seat" (together, the "Booster Seats") for kids who had reached the thirty (30)-pound weight limit of its infant car seats.

12.    BTI's Booster Seats are virtually identical child vehicular safety devices designed to raise children up to the proper height for the seatbelt.

13.    Incredibly, although BTI has labeled and marketed the Booster Seats in the United States as safe for children as small as thirty (30) pounds and as young as three (3) years-old, BTI has known for more than twenty (20) years that the Booster Seats are not safe for child under forty (40) pounds and under four (4) years-old.

14.    In the United States, the National Highway Traffic Safety Administration ("NHTSA") has long warned against using any booster seat for any child weighing less than forty (40) pounds, noting that such use can endanger those children. Instead, it cautioned that parents should continue to use seats that have an internal five (5)-point harness until the child reaches forty (40) pounds.[1] A 2009 study recognized that "[t]he primary reasons for injuries to children restrained at the time of motor vehicle crashes" included "premature graduation from harnessed safety seats to booster seats"[2] and in 2010, NHTSA issued a report reiterating, "[f]orward-facing (convertible or

---

[1] Nat'l Highway Traffic Safety Admin., *Car Seats and Booster Seats*, www.nhtsa.gov/equipment/car-seats-and-booster-seats#find-right-car-seat-age-size-recommendations (accessed Nov. 30, 2020); Am. Acad. of Pediatrics, *Policy Statement: Child Passenger Safety* (Nov. 2018), https://www.pediatrics.a appublications.org/content/pediatrics/142/5/e20182460.full.pdf.
[2] *See* K.E. Will, et al., *"Effectiveness of Child Passenger Safety Information For the Safe Transportation of Children"* at 1 (NHTSA 2015), https://www.nhtsa.dot.gov/files/81_2121-safe_transportation_of_children.pdf (citing Arbogast, et al., *"Effectiveness of belt positioning booster seats: An updated assessment"* (2009) (last visited Nov. 1, 2020)).

combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs" and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[3] Numerous U.S. safety organizations advise parents to continue to put their children in forward-facing child seats until the child reaches forty (40) pounds.

15.     Nevertheless, BTI, in fierce competition with with other rivals in the market, sought to increase its sales and market share by falsely claiming parents can safely transition their children from child restraint seats to Booster Seats once they reach thirty (30) pounds, even though scientific and crash test evidence proves that to be extremely risky and unsafe.

16.     Had BTI truthfully disclosed and reported that the safe weight range of its Booster Seats was above forty (40) pounds, virtually no parent would purchase the Booster Seats for a child weighing less than forty (40) pounds. Instead, BTI failed to disclose the proper weight range, and embarked on a disinformation campaign aimed at convincing millions that its Booster Seats are safe for children as light as thirty (30) pounds.

17.     Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased a Booster Seat. Plaintiffs bring this action for violations of relevant state consumer protection acts, consumer fraud, breach of warranty, common law fraud, and unjust enrichment. Plaintiffs seek damages, injunctive and declaratory relief, interest, costs and reasonable attorneys' fees.

## IV. GENERAL FACTUAL ALLEGATIONS

**A.     Background of BTI**

18.     Founded in 1988, BTI is an American baby products company based in Fontana, California.

---

[3] *See* NHTSA, *"Booster Seat Effectiveness Estimates Based on CDS and State Data"* (July 2010), https://www.c rashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited Nov. 1, 2020).

19.    BTI is one of the leading manufacturers and marketers of infant and juvenile products, including the Booster Seats. It sells its products through national retail stores such as Walmart and Target, as well as online via Amazon, and direct-to-consumer through its website: https://babytrend.com/.

**B.    The Development of Car Seats**

20.    The first child restraint systems were introduced in 1968, and the first child passenger safety law was passed in Tennessee ten years later.[4]

21.    In the late 1970s, the U.S. public's increasing awareness of the high rates of morbidity and mortality for child passengers resulted in rapid proliferation of state laws on the issue.[5]

22.    Between 1977 and 1985, all fifty (50) states adopted one or more laws aimed at reducing harm to infants and child passengers by requiring the use of some sort of child restraint device.[6]

23.    In the early 1980s, states required crash testing for car seats.[7]

24.    Beginning in the 1990s, the National Highway Traffic Safety Association ("NHTSA"), as well as professional associations like the American Academy of Pediatrics ("AAP"), have developed child passenger safety standards and guidelines that cover a wider range of child passenger safety issues and better protect children from injuries.[8] Among other things, they emphasized the importance of three types of safety practices in protecting child passengers: (1) device-based restraints tailored to the age/size of individual child passengers; (2) rear seating; and (3) seatbelt wearing of minors who have outgrown child restraint devices but are still in need of supervision to

---

[4] *See* Melissa Roy, *"Then and Now: 25 Years of Car Seat Safety,"* available at https://www.sun-sentinel.com/entertainment/sfp-then-and-now-25-years-of-car-seat-safety-20150828-story.html (last visited Nov. 1, 2020).
[5] Child Passenger Safety Laws in the United States, 1978–2010: Policy Diffusion in the Absence of Strong Federal Intervention, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3899584/ (last visited Mar. 18, 2020).
[6] *Id.*
[7] *See* Melissa Roy, *supra* note 4.
[8] *See* Child Passenger Safety Laws in the United States, *supra* note 5.

comply with seatbelt requirements.[9]

25.      In the early 2000s, many states began passing regulations requiring toddlers who were too small to be protected by regular seat belts to use child safety seats. The first booster seat law was implemented in 2000, when Massachusetts, and then California, implemented laws requiring booster seats for children over forty (40) pounds.[10]

## C.     BTI's Booster Seats

26.      BTI's aggressive marketing has helped make its Booster Seats one of the top-selling booster seats in the United States.[11]

27.      BTI represents to consumers that it strives to provide the "safest, most reliable" children's products in the industry.[12]

28.      BTI further claims that its products are at the top of the industry "in terms of safety" and that it goes "above and beyond any and all federally regulated safety standards."[13]

29.      But these claims are a lie. BTI knew that children under forty (40) pounds were at risk of paralysis and death if they were riding in a Booster Seat during a car crash, and yet still represented that their Booster Seats were safe for young children weighing as little as thirty (30) pounds.

## D.     BTI Misrepresented Safe Minimum Weight for Booster Seats

30.      Preventing or minimizing injuries to children should be the primary purpose of a booster seat.

31.      There is a wealth of industry data and recommendations, as well as "best practice" industry guidelines regarding the appropriate weight range of children who

---

[9] *Id.*
[10] *See* Melissa Roy, *supra* note 4.
[11] *See* https://drive.google.com/file/d/1xmBYjh3mvnwZ4i3cxL5OgmHHB5BNV7w7/view (noting BTI is one of the "nation's largest booster seat manufacturers) (last visited Feb. 17, 2021).
[12] *See* https://babytrend.com/pages/about-us (last visited Feb. 17, 2021).
[13] *Id.*

Case 5:21-cv-00398-JWH-kk   Document 1   Filed 03/05/21   Page 8 of 32   Page ID #:8

should use a booster seat.

32.     These materials make very clear that the minimum weight standard for booster seat use—one that would minimize injuries to a child in an accident—is forty (40) pounds.

33.     In Canada, where BTI also sells its Booster Seats, the sale of booster seats to children under forty (40) pounds has been prohibited since 1987.

34.     Accordingly, BTI knew or should have known that it is dangerous for children who weigh less than forty (40) pounds to use their Booster Seats.

35.     BTI made no such warning to American consumers; rather it expressly stated that it is safe for three (3) year-old children to use their Booster Seats, and listed the minimum weight as thirty (30) pounds.

36.     BTI was also fully aware that various safety organizations with expertise in child transportation safety had consistently recommended against using booster seats for children who weighed less than forty (40) pounds and, further, had identified the dangers and risks of using these products, especially for side-impact collisions.

37.     For example, in 1989, the American Academy of Pediatrics (the "AAP") issued the "1989 AAP Car Safety Guidelines." These guidelines recommended keeping a child in a convertible seat "for as long as possible" and that booster seats should only be used for children forty (40) pounds and over.

38.     These guidelines were but one of dozens of publications and articles which confirmed that children are better protected in harnessed seats for as long as possible, especially in side impacts.

39.     In 2010, NHTSA issued a report reiterating that "[f]orward- facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs" and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[14]

---

[14] *See* https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited Feb. 19, 2021).

CLASS ACTION COMPLAINT
8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23
24
25
26
27
28

40.     And in 2011, the AAP revised its 1989 Policy Statement regarding booster seat use. In the revised Policy Statement, the AAP issued a "best practice recommendation" that, for children 2 to 8 years of age, children should remain in "convertible" or "combination" child safety seats (using integrated harnesses) so long as their weight was less than the limit for the seats.However, despite the overwhelming

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  evidence that booster seats were not safe for children under forty (40) pounds, BTI

17  represented that the Boosters are safe for children as little as three (3) years of age and

18  who weigh at least thirty (30) lbs.:

19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15 The PROtect Yumi Folding Booster is a new and innovative product
from Baby Trend. Designed to fold compactly for easy transport,
16 this sleek car seat will fit securely in an aircraft overhead
compartment. Fully featured with an 8-position height-adjustable
17 headrest and a 3-positon shoulder belt adjustment, this booster
was engineered with real sizing in mind to ensure that your child
will be safe, comfortable and happy much longer. The Yumi Folding
18 Booster s top-notch safety with its deep contoured energy-
absorbing headrest and no-gap back for superior torso protection.
19 Also featured are dual cup holders and flip-up armrests. Designed
with high-quality fabrics, the breathable mesh areas provide lumbar
20 support and added cushion for long car rides. To clean, simply snap
off the pad and remove from the shell in less than 10 seconds!
21 Machine wash and snap back on for a no muss, no fuss solution!

**Baby Trend PROtect Yumi Folding Booster Car Seat, Ophelia:**

22
Car seat is designed for a child 30-100 lbs and 38-57" tall.
23 EZ Off-N-Wash Pad is machine washable and can be snapped
off in less than 10 seconds.
8-position headrest height adjustment.
24 Engineered with patented side impact head control.
3-position adjustable shoulder belt routing hooks.
25 Lap/shoulder belt guides.
Dual cup holders.
Flip-up armrests.
26 Folds for compact transport.

27

28

42.    Ignoring the nationally recognized safety guidelines and best practices for boosterseats allowed BTI to increase its share of the booming booster seat market.

43.    The thirty (30)-pound minimum weight was specifically intended by BTI to convince parents to move their small children out of full, safety harness-restrained child car seats and into the Booster Seats, generating profits for BTI, but endangering children.

44.    Consumers trust and rely on BTI's representations regarding safety and dangerously place children in the Booster Seats who are much too young to ride in them safely.

45.    What's more, in the ultimate betrayal of their customers, BTI has continued to sell their Booster Seats to parents with the representation that children who weigh as little as thirty (30) pounds can safely ride in their Booster Seats.

46.    On Target.com, BTI specifies that the Booster Seat has a minimum weight limit of thirty (30) pounds.[15] In fact, they identify the thirty (30)-pound weight limit for the Baby Trend Protect Yumi 2-in-1 Booster Seat as one of its "highlights":



---

[15]    *See*    https://www.target.com/p/baby-trend-protect-2-in-1-booster-seat/-/A-80177893?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&DFA=71700000012735142&CPNG=PLA_Baby%2BShopping_Local&adgroup=SC_Baby_Low%2BMargin&LID=700000001170770pgs&LNM=PRODUCT_GROUP&network=g&device=c&location=9021511&targetid=aud-468500407640:pla-901157174765&ds_rl=1242884&ds_rl=1246978&ds_rl=1248099&gclid=CjwKCAiAmrOBBhA0EiwArn3mfFzG7kqwaMeSWNG8L3blXtMHeJVIbGXXDvKm6BtMyFHSMYYL5_XPDRoCpe4QA_vD_BwE&gclsrc=aw.ds (last visited Feb. 17, 2021).

47.     On Amazon.com, BTI still includes in the details for one of its Booster Seats a minimum weight of thirty (30) pounds:[16]

48.     While BTI continues to encourage parents to move their children from the safety of harnessed car seats to what BTI knows are less safe Booster Seats—all for the sake of sales—it does so at the same time the U.S. Congress is investigating it for this very same conduct.[17]

49.     Indeed, in a Staff Report issued by the Subcommittee on Economic and Consumer Policy on December 10, 2020, BTI was accused of "giv[ing] parents dangers advice" with "unsafe recommendations to parents about when they can transition their children from car seats to booster seats."

**About this item**

- EZ Off-N-Wash Pad is machine washable and can be snapped off in less than 10 seconds
- 8-position headrest height adjustment
- Engineered with patented side impact head control
- 3-position adjustable shoulder belt routing hooks
- Car seat is designed for a child 30-100 lbs and 38-57" tall.

50.     The Report states that BTI "unsafely advertised Booster Seats for thirty (30)-pound children despite warnings."

51.     BTI manipulates consumers into purchasing a new product, their more dangerous booster seat, by playing on parents' wishes to see their children grow into independence.

52.     But the AAP specifically warns against early transition to booster seats, stating that although "[p]arents often look forward to transitioning from one stage or milestone to the next[,] [i]n car seats, this is one area where transitions are not 'positive,' and where delaying transitions is best." According to the AAP, "[e]ach

---

[16] *See* https://www.amazon.com/Baby-Trend-Folding-Booster-Ophelia/dp/B01LX02441/ref=sr_1_1?crid=11XBQ4SANQRW&dchild=1&keywords=baby+trend+booster+car+seat&qid=1613601113&sprefix=baby+trend+booster+%2Caps%2C176&sr=8-1 (last visited Feb. 17, 2021).

[17] https://drive.google.com/file/d/1xmBYjh3mvnwZ4i3cxL5OgmHHB5BNV7w7/view.

transition – from rear-facing to forward-facing, from forward-facing to booster seat, and from booster seat to seat belt alone – reduces the protection to the child."[18]

53.    The AAP **does not** recommend that "children 4 feet 9 inches tall or under should ride in a belt positioning booster seat" or that children that weigh as little as 30 pounds should be "riding in high back booster seat mode." What the AAP actually recommends is that "children should use a forward-facing car safety seat with a harness **for as long as possible, until they reach the height and weight limits for their seats."** As the AAP points out, many forward-facing car safety seats "can accommodate children up to 65 pounds or more."[19]

54.    BTI's representations that thirty (30)-pound children should transition to a booster seat is motivated by pure greed. BTI does not attempt to sell these same Booster Seats to thirty (30)-pound children in Canada because it is illegal and unsafe.

55.    However, even knowing that industry standards demand that the minimum weight for children riding in booster seats is forty (40) pounds, BTI continues to advertise that three (3)-year-old, thirty (30)-pound children can safely ride in a BTI Booster Seat.

56.    BTI's foregoing representations regarding the safety of the Booster Seats are materially false and misleading for all of the reasons discussed above. BTI's concealment and omission of the inherent dangers in using the Booster Seats with children under forty (40) pounds is also dangerously misleading.

## V. TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

57.    BTI has had actual knowledge for several years that the marketing, packaging, and labeling of their Booster Seats was deceptive and misleading because industry data and recommendations, as well as "best practice" industry guidelines, have all confirmed this fact for years. What's more, even after the Congressional Report, BTI still continues to engage in these deceptive and misleading practices.

---

[18] https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited Feb. 19, 2021).
[19] *Id.*

## A.    Continuing Act Tolling

58.    Beginning in or around 2009, BTI continuously marketed and sold the dangerous Booster Seats to unsuspecting parents and caregivers. They continuously represented these Booster Seats as safe for children weighing as little as thirty (30) pounds. By continuously repeating these false representations, and failing to disclose that the Booster Seats were inherently unsafe for children who weighed less than forty (40) pounds, BTI exposed children to great risk of injury and death and otherwise engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that BTI might seek to apply.

59.    BTI's' knowledge of the true inherent nature of the Booster Seats is evidenced by, among other things warnings from the AAP and major consumer groups.

60.    Thus, at all relevant times, BTI indisputably possessed continuous knowledge of the material dangers posed by the Booster Seats, yet, they knowingly continued to aggressively market and sell the product as safe for children as small as thirty (30) pounds. Plaintiffs and other Class Members' claims are not time barred.

## B.    Fraudulent Concealment Tolling

61.    BTI had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Booster Seats, that they were unsafe, and that the Booster Seats, at a minimum, pose safety concerns and are in fact dangerous to children weighing less than forty (40) pounds.

62.    This duty arose, among other things, due to BTI's overt representations that the Booster Seats were safe for children as small as thirty (30) pounds.

63.    BTI has known at all relevant times of the risks that the Booster Seats posed to children weighing less than forty (40) pounds. Prior to selling the Booster Seats, BTI knew or, but for its extreme recklessness, should have known that the Booster Seats posed a risk to children weighing less than forty (40) pounds. These facts cannot have been unknown to BTI in the absence of extreme recklessness.

64.    Despite its knowledge of the defective design and danger of the product when used as intended, BTI failed to disclose and actively concealed this material information.

65.    The purpose of BTI's active concealment of the dangers of the Booster Seats was to continue to profit from the sale of the Booster Seats and to prevent Plaintiffs and other Class Members from seeking redress.

66.    Plaintiffs and the other Class Members justifiably relied on BTI to disclose the true nature of the products they purchased and/or owned because the truth was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

67.    Any applicable statute of limitations has been tolled by BTI's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**C.    Discovery Rule Tolling**

68.    Plaintiffs and other Class Members, through the exercise of reasonable diligence, could not have discovered BTI's wrongdoing. BTI was concealing and misrepresenting the true nature of the Booster Seats and the safety risks in their use.

69.    Until recently, only BTI had knowledge of the fact that its Booster Seats pose a serious safety risk to children. Plaintiffs, Class Members, and the public at-large had no way of obtaining knowledge of this important fact until ProPublica published a robust article exposing certain facts regarding the safety of the Booster Seats on February 6, 2020. While some of the information reported by ProPublica may have been disclosed in connection with earlier, individual litigation, it was sealed by the court or only available via a fee-based access system, such as CM/ECF, which the average person typically does not know how to access or navigate.

70.    Plaintiffs and Class Members could not have reasonably discovered the true extent of BTI's illegal conduct in connection with the safety risks posed by their Booster Seats until ProPublica published the aforementioned article on February 6, 2020.

71.    Plaintiffs and other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that BTI knowingly failed to disclose material information within its knowledge about the dangers of the Booster Seats to consumers in the U.S. and elsewhere.

72.    As such, no potentially relevant statute of limitations should be applied.

**D.    Estoppel**

73.    BTI was under a continuous duty to disclose to Plaintiffs and other Class Members the fact they knew that the Booster Seats were not safe for children weighing less than forty (40) pounds.

74.    BTI knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Booster Seats from Plaintiffs and other Members of the Class.

75.    Thus, BTI is estopped from relying on any statutes of limitations in defense of this action.

## VI. CLASS ACTION ALLEGATIONS

76.    The class definition(s) may need to be amended based on the information obtained throughout discovery. Notwithstanding, pursuant to Federal Rule of Civil Procedure 23(a), including subsections (b)(2), (b)(3), and (c)(4), Plaintiffs, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of themselves and on behalf of the proposed Classes:

**National Class under Fed. R. Civ. P. 23(b)(2) and (b)(3)**: All persons within the United States who purchased a BTI Booster Seat from the beginning of any applicable limitations period through the date of class certification (the "National Class").

**California Sub-Class under Fed. R. Civ. P. 23(b)(2) and 23(b)(3):** All persons in the state of California who purchased a BTI Booster Seat from the beginning of any applicable limitations period through the date of

class certification ("the California Sub-Class").

77.    Excluded from the Classes are BTI and any entities in which BTI, or its parents, subsidiaries or affiliates have a controlling interest, and BTI's officers, agents, and employees. Also excluded from the Classes are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family.

78.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be narrowed, expanded, or otherwise modified.

79.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims, and because Plaintiffs otherwise meet the requirements of Federal Rule of Civil Procedure 23, as alleged below.

80.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Classes number in the thousands to hundreds of thousands and are geographically disbursed throughout the United States. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The number of Members of the Classes is presently unknown to Plaintiffs but may be ascertained from BTI's books and records and/or from information and records in the possession of BTI's third-party retailers and distributors. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

81.    **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law or fact, which predominate over any questions affecting individual Class Members, including:

a.    Whether BTI's Booster Seats are unsafe for child occupants weighing less than forty (40) pounds;

b. Whether BTI owed a duty of care to Plaintiffs and Members of the Classes;

c. Whether BTI was negligent or grossly negligent in representing that the Booster Seats were safe for child occupants weighing less than forty (40) pounds;

d. Whether BTI represented through advertising, marketing, and labeling that the Booster Seats were safe for child occupants weighing less than forty (40) pounds;

e. Whether the representations and/or omissions BTI made through its advertising, marketing, and labeling are false, misleading, or deceptive;

f. Whether BTI's representations and/or omissions in advertising, marketing, and labeling are likely to mislead a reasonable consumer;

g. Whether BTI had knowledge that its representations and/or omissions in advertising, marketing, and labeling were false, deceptive, or misleading;

h. Whether BTI engaged in unlawful, fraudulent, or unfair business practices;

i. Whether BTI violated statutes and/or common law as described herein;

j. Whether BTI was unjustly enriched at the expense of Plaintiffs and Class Members;

k. Whether BTI should be ordered to disgorge all or part of the ill- gotten profits it received from the sales of the Booster Seats;

l. Whether BTI breached express warranties to Plaintiffs and Class Members;

m. Whether Plaintiffs and the other Class Members are entitled to damages; and

n. Whether Plaintiffs and the other Class Members are entitled to declaratory or injunctive relief.

82. BTI engaged in a common course of conduct giving rise to the legal rights that Plaintiffs seek to enforce on behalf of themselves and the other Members of the Classes. Similar or identical statutory and common law violations, business practices,

and injuries are involved. These common questions, and the common answers they will generate, predominate in both quality and quantity over any individual issues that may exist.

83.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Members of the Class because, among other things, Plaintiffs and the other Class Members were injured through the substantially uniform misconduct by BTI. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and of other Class Members arise from the same operative facts and are based on the same legal theories.

84.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class Members they seeks to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

85.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** The elements of Rule 23(b)(2) are met here. BTI will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Booster Seats. BTI have acted or refused to act on grounds generally applicable to Plaintiffs and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as requested in the Prayer for Relief below, with respect to the Members of the Classes as a whole.

86.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Members of the Class are

relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against BTI, making it impracticable for Class Members to individually seek redress for BTI's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

87.    Further, BTI has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

88.    Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, those set forth above.

## COUNT 1

### COMMON LAW FRAUD

**(On Behalf of Plaintiffs and the Nationwide Class and,
in the Alternative, the California Sub-Class)**

89.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 88 as if fully stated.

90.    Plaintiffs assert this claim for common law fraud on an affirmative misrepresentation theory on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the California Sub-Class, against BTI.

91.    As detailed above, BTI made false or misleading statements to Plaintiffs

and Class Members regarding the safety of the Booster Seats, including age and weight limits. These misrepresentations include:

    a.    Misrepresenting that the Booster Seats are safe for children who weigh as little as thirty (30) pounds even while BTI knew that the Booster Seats were unsafe for children weighing less than forty (40) pounds; and

    b.    Misrepresenting BTI's Booster Seats are at the top of the industry "in terms of safety" and that BTI goes "above and beyond any and all federally regulated safety standards".

92.    BTI made these statements through, inter alia, labels on the on the Booster Seats and on the packaging that described the equipment and features of the Booster Seats, and the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials for the Booster Seats.

93.    BTI's representations were false and misleading because the Booster Seats are not safe for use by children as young as three (3) years old or as small as thirty (30) pounds, and use by such children makes them susceptible to serious bodily injury or death in the event of a car crash.

94.    BTI knew the representations were false and intended that Plaintiffs and Class Members to rely on them.

95.    These misrepresentations were material to Plaintiffs' and Class Members' decision to acquire the Booster Seats.

96.    Plaintiffs and Members of the Nationwide Class and the California Sub-Class justifiably relied on BTI's omissions of material facts regarding the Booster Seats, as described above.

97.    Each Plaintiff decided to purchase a Booster Seat based in part on BTI's representations regarding the safety of the Booster Seats and the specifications.

98.    BTI's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

99.    Because BTI's deceptive and unfair conduct is ongoing, injunctive relief

is necessary and proper.

## COUNT 2

## QUASICONTRACT

**(On Behalf of Plaintiffs and the Nationwide Class and,**

**in the Alternative, the California Sub-Class)**

100.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 88 as if fully stated.

101.    Plaintiffs bring this count on behalf of themselves and Members of the Nationwide Class and the California Sub-Class.

102.    BTI knowingly accepted and enjoyed the benefits of Plaintiffs and Class Members purchasing or causing the purchase of Booster Seats.

103.    BTI should not be able to retain the benefit of the funds paid because the Members of the Classes rendered payment with the expectation that the Booster Seats would be as represented and warranted.

104.    BTI misrepresented and omitted material facts regarding the actual dangers posed by the Booster Seat for children under forty (40) pounds. Through those misrepresentations and omissions, the Plaintiffs and Members of the Classes purchased the Booster Seats through which BTI profited.

105.    Equity dictates that BTI's ill-gotten gains be disgorged, and that the Plaintiffs and Members of the Classes are entitled to restitution.

## COUNT 3

## NEGLIGENT MISREPRESENTATION

**(On Behalf of Plaintiffs and the Nationwide Class and,**

**in the Alternative, the California Sub-Class)**

106.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 88 as if fully stated.

107.    Plaintiffs bring this count on behalf of themselves and Members of the Nationwide Class and the California Sub-Class.

108.  , BTI consistently represented to the public in their websites, marketing materials, and packaging of the Booster Seat that the product was safe for children as light as thirty (30) pounds.

109.   Plaintiffs relied on BTI's misrepresentations in purchasing and using the Booster Seats.

110.   At the time of sale of each Booster Seat, BTI should have known that these representations about the safety of the Booster Seat product were false.

111.   BTI's representations that the Booster Seat was safe for children as light as thirty (30) pounds were material to the purchasing decisions of Plaintiffs and the consuming public.

112.   Based on these representations of material fact, BTI had a duty to disclose the truth about the safety characteristics of the Booster Seats. Despite this duty, BTI failed to exercise reasonable care or competence in communicating information regarding the safety of the Booster Seat.

113.   These misrepresentations were made uniformly to the consuming public, including the Members of the Classes. Plaintiffs and Members of the Classes relied on BTI's representations, and would not have purchased and/or owned a Booster Seat had BTI made the representations about its safety.

114.   As a result of BTI's negligent misrepresentations concerning the Booster Seat, Plaintiffs and Members of the Classes have been damaged.

115.   Plaintiffs and Members of the Classes have also been harmed by the same negligent misrepresentations because they were induced to purchase and/or own a product unfit for its intended use and therefore without value.

## COUNT 4

### FALSE ADVERTISING UNDER THE

### CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (On behalf of the California Sub-Class)

116.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 88. Paragraphs 91 through 99, paragraphs 102 through 105, and paragraphs 108 through 115 as if fully stated.

117.    Plaintiffs brings this action on behalf of themselves and the California Sub-Class against BTI.

118.    BTI, Plaintiffs, and California Sub-Class Members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

119.    The California False Advertising Law ("California FAL") prohibits false advertising. Cal. Bus. & Prof. Code § 17500.

120.    In the course of its business, BTI, through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

121.    Specifically, by misrepresenting the Booster Seats as being safe for children weighing thirty (30) pounds, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, BTI engaged in untrue and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17500.

122.    BTI made or caused to be made and disseminated throughout California advertising, marketing, and other publications containing statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to BTI, to be untrue and misleading to consumers, including Plaintiffs and California Sub-Class Members. Examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

123.   BTI's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California Sub-Class Members, about the true safety and reliability of Booster Seats, the quality of BTI's brand, and the true value of the Booster Seats.

124.   BTI's scheme and concealment of the true characteristics of the Booster Seats were material to Plaintiffs and California Sub-Class Members, as BTI intended. Had they known the truth, Plaintiffs and California Sub-Class Members would not have purchased the Booster Seats, or would have paid significantly less for them.

125.   Plaintiffs and California Sub-Class Members relied on BTI and had no way of discerning that those representations were false and misleading, or otherwise learning the facts that BTI had concealed or failed to disclose. Plaintiffs and California Sub-Class Members did not, and could not, unravel BTI's deception on their own.

126.   BTI had an ongoing duty to Plaintiffs and California Sub-Class Members to refrain from unfair or deceptive practices under the California FAL in the course of its business. Specifically, BTI owed Plaintiffs and California Sub-Class Members a duty to disclose all the material facts concerning the Booster Seats because they possessed exclusive knowledge, they intentionally concealed the true characteristics of the Booster Seats from Plaintiffs and California Sub-Class Members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

127.   Plaintiffs and California Sub-Class Members suffered ascertainable loss and actual damages as a direct and proximate result of BTI's concealment, misrepresentations, and/or failure to disclose material information.

128.   BTI's violations present a continuing risk to Plaintiffs and California Sub-Class Members, as well as to the general public. BTI's unlawful acts and practices complained of herein affect the public interest.

129.    Plaintiffs and California Sub-Class Members seek an order enjoining BTI's false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and California Sub-Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

## COUNT 5

### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (On Behalf of the California Subclass)

130.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 88. Paragraphs 91 through 99, paragraphs 102 through 105, paragraphs 108 through 115, and paragraphs 118 through 129 as if fully stated.

131.    Plaintiffs bring this action on behalf of themselves and the California Sub-Class against BTI.

132.    The Booster Seats are "goods" within the meaning of Cal. Civ. Code § 1761(a).

133.    BTI, Plaintiffs, and California Sub-Class Members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

134.    Plaintiffs and California Sub-Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

135.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

136.    In the course of its business, BTI, through its agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability,

safety, and performance of the Booster Seats, as detailed above.

137.   Specifically, by misrepresenting the Booster Seats as safe for children weighing thirty (30) pounds, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, BTI engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

    i.    Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have;

    ii.    Representing that the Booster Seats are of a particular standard, quality, and grade when they are not;

    iii.    Advertising the Booster Seats with the intent not to sell them as advertised; and

    iv.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

138.   BTI's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and California Sub-Class Members, about the true safety and reliability of Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

139.   BTI's scheme and concealment of the true characteristics of the Booster Seats were material to Plaintiffs and California Sub-Class Members, as BTI intended. Had they known the truth, Plaintiffs and California Sub-Class Members would not have purchased the Booster Seats, or would have paid significantly less for them.

140.   Plaintiffs and California Sub-Class Members had no way of discerning that BTI's representations were false and misleading, or otherwise learning the facts that BTI had concealed or failed to disclose. Plaintiffs and California Sub-Class

Members did not, and could not, unravel BTI's deception on their own.

141.    BTI had an ongoing duty to Plaintiffs and California Sub-Class Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, BTI owed Plaintiffs and California Sub-Class Members a duty to disclose all the material facts concerning the Booster Seats because they possessed exclusive knowledge, they intentionally concealed the true characteristics of the Booster Seats from Plaintiffs and the California Sub-Class Members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

142.    Plaintiffs and California Sub-Class Members suffered ascertainable loss and actual damages as a direct and proximate result of BTI's concealment, misrepresentations, and/or failure to disclose material information.

143.    BTI's violations present a continuing risk to Plaintiffs and California Sub-Class Members, as well as to the general public. BTI's unlawful acts and practices complained of herein affect the public interest.

144.    BTI was provided notice of the issues raised in this count and this Complaint by way of a notice letter pursuant to Cal. Civ. Code § 1782. Because BTI failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and California Sub-Class Members are entitled.

145.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs and California Sub-Class Members seek an order enjoining BTI's unfair or deceptive acts or practices and awarding restitution, attorneys' fees, and any other just and proper relief available under the CLRA against BTI.

**COUNT 6**

**UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES**

**UNDER THE CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

146.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 88. Paragraphs 91 through 99, paragraphs 102 through 105, paragraphs 108 through 115, paragraphs 118 through 129, and paragraphs 132 through 145 as if fully stated.

147.    Plaintiffs brings this action on behalf of themselves and the California Sub-Class against BTI.

148.    California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

149.    As detailed in the allegations above, BTI knowingly and intentionally designed, developed, manufactured, marketed and sold Booster Seats, while misrepresenting and fraudulently concealing the safety of the Booster Seats from Plaintiffs and California Sub-Class Members alike. In doing so, BTI has engaged in at least the following unlawful, fraudulent, and unfair business acts and practices in violation of the UCL:

i.      Knowingly and intentionally concealing from Plaintiffs and California Sub-Class Members that the Booster Seats are not suitable for use by children weighing thirty (30) pounds while obtaining money from Plaintiffs and California Sub-Class Members; and

ii.     Marketing the Booster Seats as being able to properly protect children weighing as little as thirty (30) pounds.

150.    BTI's misrepresentations, omissions, and concealment of the true characteristics Booster Seats were material to Plaintiffs and California Sub-Class Members, and BTI misrepresented, concealed, or failed to disclose the truth with the

1    intention that consumers would rely on the misrepresentations, concealment, and

2    omissions. Had they known the truth, Plaintiffs and California Sub-Class Members who

3    purchased the Booster Seats would not have purchased them at all, or would have paid

4    significantly less for them.

5        151.   Plaintiffs and California Sub-Class Members suffered ascertainable loss as

6    a direct and proximate result of BTI's misrepresentations, concealment of and failure to

7    disclose material information, and violation of the laws alleged above.

8        152.   Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiffs and California Sub-

9    Class Members seek an order enjoining BTI's unfair and/or deceptive acts or practices,

10   any such orders or judgments as may be necessary to restore to Plaintiffs and California

11   Sub-Class Members any money acquired by unfair competition, including restitution

12   and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203, and

13   any other just and proper relief available under the California UCL.

14                          **PRAYER FOR RELIEF**

15       WHEREFORE, Plaintiffs, individually and on behalf of the other Members of

16   the Classes, respectfully request that this Court enter an Order:

17       a.     Certifying the Nationwide Class and/or the California Sub-Class and

18              appointing Plaintiffs as the Class Representatives, and appointing

19              Plaintiffs' Counsel as Class Counsel under Rule 23 of the Federal Rules

20              of Civil Procedure;

21       b.     A declaration that BTI's failure to disclose the dangers of the Booster

22              Seats was negligent, deceptive, unfair, and unlawful;

23       c.     Finding that BTI's conduct was negligent, deceptive, unfair, and

24              unlawful as alleged herein;

25       d.     Finding that BTI's conduct was in violation of the statutes and common

26              law referenced herein;

27       e.     Awarding Plaintiffs and the other Class Members actual, compensatory,

28              and consequential damages;

f.   Awarding Plaintiffs and the other Class Members statutory damages and penalties, as allowed by law;

g.   Awarding Plaintiffs and the other Class Members restitution and disgorgement;

h.   Awarding Plaintiffs and the other Class Members pre- judgment and post-judgment interest;

i.   Awarding Plaintiffs and the other Class Members reasonable attorneys' fees costs and expenses; and

j.   Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims so triable.

Dated: March 5, 2021

Respectfully Submitted,

/s/ *Christopher L. Rudd*
**THE RUDD LAW FIRM**
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawla.com
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Tel.: 310.663.0705
Fax: 310.359.0258

Gary E. Mason*
E-mail: gmason@masonllp.com
Danielle Perry (SBN 292120)
E-mail: dperry@masonllp.com
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Fax: (202) 429-2294

Melissa R. Emert*
E-mail: memert@kgglaw.com
Gary S. Graifman*
E-mail: ggraifman@kgglaw.com
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335

*Pro hac vice anticipated*                    *Counsel for Plaintiffs*